UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____

|  |  |
|---|---|
| DR. STEPHEN T. SKOLY, Jr. | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : C.A. 1:22-cv-00058-JJM-LDA |
| | : |
| DANIEL J. MCKEE, in his official capacity | : |
| as the Governor of the State of Rhode Island; | : |
| and JAMES McDONALD, in his official | : |
| capacity as the Interim Director of the Rhode | : |
| Island Department of Health, and | : |
| MATTHEW D. WELDON, in his official | : |
| Capacity as the Director of the Rhode Island | : |
| Department of Labor and Training | : |
| | : |
| Defendants. | : |

_____

## **DEFENDANTS' MOTION TO DISMISS**

When this case was originally filed, a Rhode Island Department of Health

Emergency Regulation (216-RICR-20-15-8) required "all health care workers and

health care providers must be vaccinated [against COVID-19], subject to a medical

exemption set forth in Section 8.3(D) of this Part."[1]  Hours before 216-RICR-20-15-8

---

[1] A "health care worker" was defined to mean "any person who is temporarily or permanently employed by or at, or who serves as a volunteer in, or has an employment contract with, a health care facility, and has or may have direct contact with a patient in that health care facility.  This may include, but not be limited to, a physician, physician assistant, nurse, nursing assistant, therapist, technician, clinician, behavioral analyst, social worker, occupational, physical or speech therapist, phlebotomist, emergency medical service practitioner, dental personnel, pharmacist, laboratory personnel, autopsy personnel, students and trainees, contractual staff not employed by the health-care facility; other health care providers, including those who have privileges at, but are not employed by, the health care

1

was set to expire by operation of law, the Rhode Island Department of Health replaced 216-RICR-20-15-8 with another Emergency Regulation (216-RICR-20-15-9), which required "health care workers"[2] (but not health care providers) to be up to date with all Centers for Disease Control and Prevention (CDC) recommended vaccine doses, **or** to wear a medical grade N95 mask at each health care facility where he or she is employed or volunteering during a period in which the COVID-19 prevalence rate in

---

facility; and persons (e.g., clerical, dietary, housekeeping, laundry, security, maintenance, administrative, billing, and volunteers) not directly involved in patient care but potentially exposed, in the course of employment, to infectious agents that can be transmitted from person to person. This term shall not apply to a patient's family member or friend who visits or otherwise assists in the area of that patient in a health care facility." 216-RICR-20-15-8(8.2)(A)(5).

A "health care provider" was defined to mean "any person licensed by the Department to provide or otherwise lawfully providing health care services, including, but not limited to, a physician, dentist, nurse, optometrist, podiatrist, physical therapist, social worker, pharmacist, emergency medical service practitioner, or psychologist, provided such person is either directly involved in patient care or potentially exposed to infectious agents that can be transmitted from person to person." 216-RICR-20-15-8(8.2)(A)(6).

[2] A "health care worker" was defined as "any person who (A)(i) is temporarily or permanently employed by a health care facility, (ii) serves as a volunteer in a health care facility, or (iii) is compensated by a third (3rd) party that has an agreement with the health care facility to provide staffing services and (B) has or may have direct patient contact in that health care facility. This may include but not be limited to, a physician, physician  assistant, nurse, nursing assistant, therapist, technician, clinician, behavioral analyst, social worker, occupational, physical or speech therapist, phlebotomist, emergency medical service personnel, dental personnel, pharmacist, laboratory personnel, autopsy personnel, students and trainees, contractual staff not employed by the health-care facility; other health care providers, including those who have privileges at, but are not employed by, the health care facility; and persons (e.g., clerical, dietary, housekeeping, laundry, security, maintenance, administrative, billing, and volunteers) not directly involved in patient care but potentially exposed to infectious agents that can be transmitted from person to person. This term shall not apply to a patient's family member or friend who visits or otherwise assists in the care of that patient in a health care facility."

the State is greater than or equal to 50 cases per 100,000 people per week.  Emergency Regulation 216-RICR-20-15-9 has since been replaced with a permanent regulation, 216-RICR-20-15-7, which in relevant part tracks the vaccination *or* N95 mask requirement of 216-RICR-20-15-9.

The Plaintiff, Dr. Stephen T. Skoly, takes no issue with Rhode Island's vaccination *or* N95 masking requirement as was set forth in 216-RICR-20-15-9 or is set forth in 216-RICR-20-15-7; rather Skoly focuses his attention on the defunct 216-RICR-20-15-8, which required health care workers and health care providers to vaccinate, unless medically exempt.  The Emergency Regulation that Skoly challenges – 216-RICR-20-15-8 – was last effective on or about March 11, 2022, when it was superseded by 216-RICR-20-15-9 on that date.  With respect to 216-RICR-20-15-8, Skoly "seeks a declaration that his rights were violated, damages for the past violations, and an injunction against future violations." Second Amended Complaint, ¶ 6.

## FACTUAL BACKGROUND

On August 17, 2021, the Rhode Island Department of Health (RIDOH) promulgated an Emergency Regulation (216-RICR-20-15-8) requiring "all health care workers and health care providers be vaccinated against COVID-19 by October 1, 2021." Second Amended Complaint, ¶¶ 37-38.  According to Rhode Island law, an "emergency rule may be effective for not longer than one hundred twenty (120) days, renewable once for a period not exceeding sixty (60) days." R.I. Gen. Laws § 42-35-2.10.  Thus, as a matter of law, 216-RICR-20-15-8 could last no longer than 180 days,

*i.e.*, the Emergency Regulation was scheduled to expire on or about February 13, 2022.  Second Amended Complaint, ¶ 48.

Skoly chose to refuse to comply with the Emergency Regulation and on October 1, 2021, the RIDOH issued a "Notice of Violation and Compliance Order."  Second Amended Complaint, ¶ 55.  The "Notice of Violation and Compliance Order" stated, in relevant part:

> On October 1, 2021, the Providence Journal reported that Respondent [Dr. Skoly] stated that (a) he was not vaccinated, (b) did not meet the medical exemption incorporated in the regulation, and that he intended to directly engage in patient care or activity in which he or others would potentially be exposed to infectious agents that can be transmitted from person to person.  Second Amended Complaint, ¶ 56.

Based upon this "Notice of Violation and Compliance Order," RIDOH directed Skoly "to cease professional conduct as a health care provider … unless and until he has complied with the terms and conditions of 216-RICR-20-15-8."  Second Amended Complaint, ¶ 57.  Skoly refused to comply with 216-RICR-20-15-8 and he ceased providing medical services.

During this time period, Skoly applied to the Rhode Island Department of Labor and Training (RIDLT) for unemployment benefits.  Second Amended Complaint, ¶ 70.  Under Rhode Island law, an applicant seeking unemployment benefits must actively be looking for work.  Second Amended Complaint, ¶ 73 (referencing R.I. Gen. Laws § 28-44-12).  Skoly's complaint represents that he was denied unemployment benefits because, according to the RIDLT, "the Claimant has

not conducted a work search as required by Section 28-44-12 of the Act."[3]  Second

Amended Complaint, ¶ 77.

On February 11, 2022, Governor Daniel J. McKee issued Executive Order 22-

14, suspending "the statutory time limits contained in Rhode Island General Laws §

42-35-2.10 . . . for 216-RICR-20-15-8."[4]  *See* Exhibit B.  The effect of Executive Order

---

[3] This quotation is taken from the Board of Review decision denying Skoly's appeal of the denial of unemployment benefits.  *See* Exhibit A.  Typically exhibits may not be included within a motion to dismiss, however, "courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff's claim; or for documents sufficiently referred to in the complaint."  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).  All of these exceptions apply in this case.  Most notably, Skoly quoted from the Board of Review's decision, and therefore, has incorporated the Board of Review's decision into the Second Amended Complaint.  *Compare* Second Amended Complaint, ¶170 ("has not conducted a work search as required by Section 28-44-12 of the Act") *with* Exhibit A (stating in the conclusion "the Claimant has not conducted a work search as required by Section 28-44-12 of the Act").  *See also* F. Evid. R. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – of any other writing or recorded statement – that in fairness ought to be considered at the same time.").

[4] Rhode Island General Laws § 30-15-9(e)(1) provides that during a state of emergency, the Governor may "[s]uspend the provisions of any regulatory statute prescribing the procedures for conduct of state business, or the orders, rules, or regulations of any state agency, if strict compliance with the provisions of any statute, order, rule, or regulation would in any way prevent, hinder, or delay necessary action in coping with the emergency, provided that the suspension of any statute, order, rule or regulation will be limited in duration and scope to the emergency action requiring said suspension."  Governor McKee declared a state of emergency on August 19, 2021. https://governor.ri.gov/executive-orders/executive-order-21-86.

Pursuant to R.I. Gen. Laws § 30-15-9(g), the Governor's authority to issue executive orders under a declared state of emergency expires "one hundred eighty (180) days from the date of the emergency order or proclamation of a state of disaster emergency, unless and until the general assembly extends the one hundred eighty (180) day period by concurrent resolution."  As such, while this 180 day time period was scheduled to expire on February 13, 2022 (180 days after the state of emergency was declared on August 17, 2021), the General Assembly passed a joint resolution

22-14 was to extend 216-RICR-20-15-8 – which was set to expire on February 13, 2022 – through the date specified in Executive Order 22-14, *i.e.*, March 12, 2022.  Second Amended Complaint, ¶ 92.  *See also* Exhibit B.

With the days 216-RICR-20-15-8 would be effective dwindling, on February 24, 2022, the RIDOH proposed a permanent regulation to replace 216-RICR-20-15-8. Second Amended Complaint, ¶ 96.  Unlike 216-RICR-20-15-8, which required health care workers and health care providers to vaccinate (unless medically exempt), the proposed permanent regulation required health care workers (but not health care providers) to "be up to date with a SARS-CoV-2 vaccine OR wear a medical grade N95 mask when the [COVID-19] prevalence rate is high."  Second Amended Complaint, ¶ 98 (emphasis and alterations in original).  "High" prevalence is defined as "greater than fifty (50) cases per one hundred thousand (100,000) people per week, as reported by the Department."  Second Amended Complaint, ¶ 99.

On March 11, 2022 – one day before 216-RICR-20-15-8 was scheduled to expire and with the proposed permanent regulation going through the regulatory process required under the Administrative Procedures Act – RIDOH promulgated a new Emergency Regulation, which replaced the soon-to-expire 216-RICR-20-15-8.  Second Amended Complaint, ¶ 107.  The "new" Emergency Regulation was designated 216-RICR-20-15-9 and became effective on March 11, 2022.   Emergency Regulation 216-RICR-20-15-9 "adopted the language of the Proposed Permanent Regulation[.]"

---

extending the executive order powers under Chapter 15 of Title 30 through March 31, 2022.  *See* Exhibit C.

Second Amended Complaint, ¶ 107.  In other words, as of March 11, 2022 – and pursuant to Emergency Regulation 216-RICR-20-15-9 – when the COVID-19 prevalence rate is equal to or greater than 50 persons per 100,000 over a seven day period in Rhode Island, health care workers must either be vaccinated against COVID-19 *or* wear an N95 mask.

On March 11, 2022, RIDOH withdrew the "Notice of Violation and Compliance Order" against Skoly and Skoly resumed his medical practice.  Second Amended Complaint, ¶ 109-110.  Having returned to practice without a COVID-19 vaccination, Skoly acknowledges that "pre-trial relief [is] unnecessary."  Second Amended Complaint, ¶ 124.  On June 15, 2022, the proposed Permanent Regulation was enacted (216-RICR-20-15-7), which superseded Emergency Regulation 216-RICR-20-15-9.  https://rules.sos.ri.gov/regulations/part/216-20-15-7.  The Permanent Regulation (216-RICR-20-15-7) maintains the vaccination *or* N95 mask requirement when the COVID-19 prevalence rate in Rhode Island is equal to or greater than 50 cases, per 100,000 people, within a seven-day period.

The operative complaint (the Second Amended Complaint filed on April 26, 2022) names Governor Daniel J. McKee, Interim RIDOH Director James McDonald, and RIDLT Director Matthew D. Weldon, all in their official capacities only (collectively "State Defendants").  The complaint seeks the following relief:

I: Equal Protection Clause and 42 U.S.C. § 1983 against McKee and McDonald.

Skoly seeks a declaration that 216-RICR-20-15-8 violated the Equal Protection Clause and nominal damages.  Second Amended Complaint, ¶ 125.  Skoly also seeks

a permanent injunction that "in applying current and future COVID-19 safety regulations for health care workers, Dr. Skoly be treated no differently than any other worker with a medical reason to be exempted from vaccination." Second Amended Complaint, ¶ 129.

II:  <u>Due Process Clause and 42 U.S.C. § 1983 against McKee and McDonald</u>.

Plaintiff seeks a declaration that 216-RICR-20-15-8 violated the Due Process Clause.

III:  <u>First Amendment and 42 U.S.C. § 1983 against McKee and McDonald</u>.

Skoly seeks a declaration that the October 1, 2021 "Notice of Violation and Compliance Order" resulted from "Defendants' retaliatory actions [that] violated his First Amendment rights; nominal damages; and a permanent injunction that Defendants do not again violate his First Amendment right to speak out against government policy." Second Amended Complaint, ¶ 164.

IV:  <u>Due Process Clause and 42 U.S.C. § 1983 against McKee, McDonald, and Weldon</u>.

Skoly seeks a declaration that denying him unemployment benefits under state law violates the Due Process Clause. Second Amended Complaint, ¶ 175. Skoly also seeks this Court's order that he is entitled to unemployment benefits from October 1, 2021 to March 11, 2022, and a permanent injunction "against future unlawful denial of benefits." Second Amended Complaint, ¶ 176.

## STANDARD OF REVIEW

In the context of a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559

(2007). Thus, a plaintiff's "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008). In evaluating whether a plaintiff's claims are entitled to relief, the court must accept as true all well-pleaded facts and indulge all reasonable inferences in plaintiff's favor. *Twombly*, 550 U.S. at 557. However, the court is not compelled to accept legal conclusions set forth as factual allegations in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009). In other words, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio–Hernandez v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir. 2011). Only a complaint that states a plausible claim for relief can survive a motion to dismiss. *Iqbal*, 556 U.S. at 679.

## POINT I

## SKOLY MAY NOT RECOVER MONETARY DAMAGES

Skoly's request for damages against the State Defendants – sued in their official capacities – is barred because the State Defendants cannot be liable for damages in an action brought pursuant to Section 1983. *See Will v. Michigan*, 491 U.S. 58, 71 (1989).

The United States Supreme Court has made clear that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71. "Based on the Supreme Court's holding in *Will*, it is clear that neither the State of Rhode Island nor any of its officials acting in their official capacities, are 'persons' that can be held liable under § 1983." *Jones v. State of Rhode Island*, 724 F.

Supp. 25, 28 (D.R.I. 1989) (dismissing plaintiffs' claims under § 1983 which were brought against the State of Rhode Island or an individual sued in his official capacity as an employee of the State).  As the First Circuit put it, "[i]t is settled beyond peradventure . . . that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1991).  Accordingly, Skoly's Section 1983 claims for damages fails as a matter of law.[5]

## POINT II

### INJUNCTIVE AND DECLARATORY RELIEF

A party seeking to invoke "the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  An abstract injury is insufficient; rather Skoly must "show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Id*. at 101-02.  "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id*. at 102 (ellipsis in original).

---

[5] Skoly's claim for unemployment compensation benefits is also barred by collateral estoppel and res judicata. *See* discussion, *infra*.

**A.    Skoly's Claim for Injunctive Relief is Non-Justiciable Because he Seeks to Enjoin Future Unknown Events that May Never Occur**

Skoly **does not** seek injunctive relief to practice medicine without a COVID-19 vaccine; that relief was accomplished on March 11, 2022, when RIDOH issued 216-RICR-20-15-9, which superseded 216-RICR-20-15-8.  Second Amended Complaint, ¶ 124.  Skoly can continue to practice medicine without a COVID-19 vaccine pursuant to 216-RICR-20-15-7, the Permanent Regulation.

Instead of seeking to enjoin any current violation of federal law, Skoly asks this Court to enjoin what he contends **may become a future** violation of federal law.  Of course, the facts and circumstances of any such future violation – assuming such facts or circumstances even arise – are unknown and unknowable, even to Skoly.  Nonetheless, Skoly invites this Court to enjoin the State Defendants: (1) from enforcing any future vaccine mandate against Skoly that treats him differently from a person with an accepted medical exemption, (2) from violating his First Amendment rights, and (3) from improperly denying him unemployment benefits.   Second Amended Complaint, at 22 (prayer for relief).  The request to enjoin future unknown conduct should not be entertained by this Court.

In *Town of Portsmouth v. Lewis*, the Town requested injunctive relief to enjoin the collection of tolls, despite enacted legislation repealing the challenged tolls.  813 F.3d 54, 58 (1st Cir. 2016).  Similar to Skoly, the Town suggested injunctive relief was still necessary to prevent the possibility of future tolling.  The Court of Appeals disagreed, explaining that it "generally consider[s] the law as it exists at the time of our review," and "not as it might speculatively exist in the future."  *Id*. at 59.  The

First Circuit continued, [t]hus, even if we were permitted to issue an advisory opinion on hypothetical conduct, which we are not, we would decline to do so." *Id.  See also New England Regional Council of Carpenters v. Kinton*, 284 F.3d 9, 18 (1st Cir. 2002) ("it would be pointless either to enjoin the enforcement of a regulation that is no longer in effect or to declare its constitutional status").

Here, Skoly cannot sustain his burden of invoking this Court's jurisdiction and demonstrating that he is "'immediately in danger of sustaining some direct injury' as the result of the challenged official conduct," nor can Skoly demonstrate that any injury or threat of injury is "both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).  Skoly's complaint is devoid of any such allegation.

Indeed, in late-February 2022 – while 216-RICR-20-15-8 was still effective – RIDOH provided public notice that it was promulgating a permanent regulation.  In contrast to the requirements of 216-RICR-20-15-8, the proposed permanent regulation required health care workers (but not health care providers) to wear an N95 mask *or* vaccinate when the COVID-19 prevalence rate was equal to or greater than 50 cases per 100,000 people over a seven day period.

On March 11, 2022 – one day before 216-RICR-20-15-8 was scheduled to expire and during the time period when the proposed permanent regulation was still undergoing the regulatory process required by the Administrative Procedures Act – – RIDOH promulgated Emergency Regulation 216-RICR-20-15-9, which mirrored the proposed permanent regulation in all material respects.  In other words, since March

11, 2022 when 216-RICR-20-15-9 superseded 216-RICR-20-15-8, COVID-19 vaccination ***has not been required*** for health care workers or health care providers. 216-RICR-20-15-9 remained in effect until June 15, 2022, when the proposed permanent regulation became (and remains) effective. https://rules.sos.ri.gov/regulations/part/216-20-15-7. Where the State Defendants have taken ***no*** steps to reimpose a COVID-19 vaccination requirement – and instead have enacted a permanent regulation requiring an N95 mask ***or*** vaccination – Skoly cannot establish (nor does he allege) that he is "immediately in danger of sustaining some direct injury." *See e.g., City of Los Angeles*, 461 U.S. at 102; *id*. at 108 ("five months elapsed between October 6, 1976, and the filing of the complaint, yet there was no allegation of further unfortunate encounters between Lyons and the police").

To be sure, "[t]he dynamic nature of both the virus that has given rise to this pandemic and the public health response to it all but ensures" unpredictability, and even if future COVID-19 restrictions are imposed, they are likely to be based upon "at least somewhat different facts and considerations." *Bayley's Campground Inc. v. Mills*, 985 F.3d 153, 157 (1st Cir. 2021). But the justiciability issue before this Court is not whether Skoly might be subject to a vaccination requirement at some future date, but rather whether Skoly presently faces a "real and immediate" threat of injury sufficient to invoke this Court's Article III jurisdiction. *City of Los Angeles*, 461 U.S. at 102. This question must be answered, "no."

First, the COVID-19 vaccination requirement, as well as the medical exemptions, previously recognized through 216-RICR-20-15-8, have not been effective

since March 11, 2022.  As discussed, *supra*, Rhode Island has taken no steps toward such a future requirement, thus Skoly faces no "real and immediate" threat of injury. *City of Los Angeles*, 461 U.S. at 102.

Second, whether Rhode Island ever re-imposes a COVID-19 vaccination requirement – and what the medical exemptions to such a future vaccination requirement might be – at this point, is guess-work. What is clear, however, is that the medical exemptions previously recognized were not arbitrary but were based on specific CDC guidance and the scientific knowledge available at that time.  At the time this case arose – as well as presently – the CDC's Guidelines address Bell's Palsy:

> [r]are cases of Bell's palsy (acute peripheral facial nerve palsy) were reported following vaccination of participants in the mRNA COVID-19 vaccine clinical trials, but FDA was not able to determine whether these cases were causally related to vaccination. *People with a history of Bell's palsy may receive any currently FDA-approved or FDA-authorized COVID-19 vaccine.*

https://www.cdc.gov/vaccines/covid-19/clinical-considerations/interim-considerations-us.html (last visited, June 23, 2022).  Skoly's request that he be treated similarly to all other medically exempt persons ignores the fact that unlike the four medical exemptions previously recommended by the CDC and recognized through 216-RICR-20-15-8, the CDC has determined that persons with Bell's Palsy may receive any FDA approved or FDA authorized COVID-19 vaccine, and the CDC has not reported a relationship between a reoccurrence of Bell's Palsy and a non-

mRNA vaccine.[6]

Skoly also asks this Court to enjoin the State Defendants from infringing upon his First Amendment rights.  This request stems from the allegation that the October 1, 2021 "Notice of Violation and Compliance Order" was issued not because of a "medical issue," but because Skoly had "opened his big month."[7]  Second Amended Complaint, ¶ 68.  Notwithstanding this allegation concerning past-conduct, Skoly's complaint makes no allegation that it is RIDOH policy or practice to retaliate against Skoly (or someone in Skoly's position), nor has Skoly demonstrated that he "'is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct[.]"  *City of Los Angeles*, 461 U.S. at 102.  The requested injunction ignores at least two points.

First, Skoly does not contest that 216-RICR-20-15-8 required him to vaccinate against COVID-19, that he did not vaccinate against COVID-19, and that he continued to treat patients in violation of 216-RICR-20-15-8.  As such, while Skoly may contend that the medical exemptions set forth in 216-RICR-20-15-8 were overly narrow, Skoly does not contest that 216-RICR-20-15-8 applied to him and that he violated the Emergency Regulation.

---

[6] The Pfizer vaccine and the Moderna vaccine are mRNA vaccines, Johnson & Johnson is a non-mRNA vaccine.

[7] The quotation is not attributed to any person.  Skoly is not the only person who was subjected to a "Notice of Violation and Compliance Order" issued due to unvaccinated health care workers or health care providers violating 216-RICR-20-15-8.  *See Dr. T. v. Alexander-Scott*, 2022 WL 79819 * 10 (D.R.I. 2022).

Second, in seeking an injunction against RIDOH from allegedly committing future retaliatory actions in violation of Skoly's First Amendment rights, Skoly assumes that the October 1, 2021 "Notice of Violation and Compliance Order" was the result of his free-speech, rather than an uncontested violation of 216-RICR-20-15-8.  Regardless of this assumption, however, Skoly makes no effort to demonstrate that an injunction is necessary because he "has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'"  *City of Los Angeles*, 461 U.S. at 102.  As the Supreme Court has recognized, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing present adverse effects."  *Id*.

In seeking an injunction against the RIDOH, Skoly may assert that his complaint implicitly suggests (but does not plead) that RIDOH has a policy or practice that the agency will retaliate against those who exercise their First Amendment rights; yet, Skoly points to no policy, no practice, and no prior instances of alleged retaliatory conduct against himself or anyone else.  Such a barren record of retaliatory conduct is incompatible with the requirement that Skoly "is immediately in danger of sustaining some direct injury," necessitating an injunction.  *Id*. at 105-06 ("In order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that all police officers in Los Angeles always

choke any citizen with whom they happen to have an encounter . . . or, (2) that the City ordered or authorized police officers to act in such manner."). Skoly does not come close to demonstrating such a live and justiciable issue. *See also Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) (presumption of legitimacy accorded to Government's official conduct).

Lastly, Skoly seeks injunctive relief "against future unlawful denial of benefits." Second Amended Complaint, ¶ 176. As background, after the "Notice of Violation and Compliance Order" issued, Skoly ceased working and subsequently applied for unemployment benefits. According to Skoly, the Rhode Island Department of Labor and Training (RIDLT) denied the unemployment benefits claim because Skoly had "not conducted a work search as required by Section 28-44-12 of the Act." Second Amended Complaint, ¶ 170. Skoly provides no allegation or suggestion that he sought further review of the adverse state-administrative decision.

Skoly's underlying premise – that he was unlawfully denied unemployment benefits – fails as a matter of law. Under Rhode Island law, collateral estoppel applies when there is "an identity of issues[,] the prior proceeding *** [has] resulted in a final judgment on the merits[,] and the party against whom the collateral estoppel is sought must be the same as or in privity with the party in the prior proceedings." *Lee v. Rhode Island Council 94*, 796 A.2d 1080, 1084 (R.I. 2002). All three elements are satisfied, therefore, Skoly may not claim in this lawsuit that the RIDLT determination was unlawful.

In *East Providence School Committee v. Rhode Island Council, 94, AFSCME,* 2005 WL 374271 (R.I. Superior, Jan. 11, 2005), an employee was terminated for misconduct.  The employee applied to RIDLT for unemployment benefits, which the agency granted.  *Id.* at * 1.  The School Committee appealed the RIDLT decision, which was reversed on the basis that the employee was discharged for misconduct. Subsequently, the employee appealed that decision, which was affirmed by the Board of Review.  *Id.*  Although the employee could have sought additional review (as of right) to the Rhode Island District Court, no further appeal ensued and the Board of Review decision became final.  *Id.*  Separately, the employee also filed a grievance wherein an arbitrator ordered the employee to be reinstated.  *Id.*  The School Committee appealed the arbitrator's decision to the Rhode Island Superior Court.  *Id.*

While the Rhode Island Superior Court determined that the arbitrator had the authority to modify the discipline, the Superior Court simultaneously concluded that the non-appealed Board of Review's determination that the employee was discharged for misconduct was a final determination that could not be collaterally attacked. Citing Rhode Island Supreme Court precedent, the Superior Court explained:

> the Court has recently declared that res judicata may attach to review board decisions as long as the tribunal acted in a quasi judicial capacity. … 'An administrative tribunal acts in a quasi judicial capacity when it affords the parties substantially the same rights as those available in a court of law, such as the opportunity to present evidence, to assert legal claims and defenses, and to appeal from an adverse decision.' … Here, [RIDLT] allowed the parties to present evidence and testimony in support of their legal arguments. Furthermore, the Board's decision expressly stated that Defendant had thirty days to appeal [RIDLT's] decision to the District Court before it became a final judgment-an option which Defendant chose not to pursue. Because the proceeding before [RIDLT] involved an administrative agency acting in a quasi-

> judicial capacity, res judicata precludes Defendant from relitigating issues that were argued before and decided by the Board.

*Id.* at * 3 (citations omitted).  *See also Department of Corrections v. Tucker*, 657 A.2d 546, 550 (R.I. 1995) ("Since the decision of the board was not appealed, it because a final decision and was binding on both Tucker and the department.").

Based on these facts, Skoly is precluded from contesting the Board of Review's final decision that Skoly is not entitled to unemployment compensation benefits by application of the doctrines of res judicata and/or collateral estoppel.  Exhibit A makes clear that similar to the employee in *East Providence School Committee*, Skoly availed himself of the opportunity to present evidence and argument and had the opportunity to appeal the Board of Review decision to the Rhode Island District Court, which he declined to do.

Before this Court and the Board of Review, there is an identity of issues (whether Skoly was properly denied unemployment compensation benefits) and the party against whom estoppel is asserted is the same (Skoly).  Moreover, the Board of Review's decision "expressly stated that [Skoly] had thirty days to appeal [RIDLT's] decision to the District Court before it became a final judgment – an option which [Skoly] chose not to pursue."  *East Providence School Committee*, 2005 WL 374271 * 3.  *See also* R.I. Gen. Laws § 28-44-52 ("The decision shall be final unless any party in interest, including the director, initiates judicial review by filing a petition with the clerk of the sixth division of the district court within thirty (30) days as set forth in the Administrative Procedures Act, chapter 35 of title 42."); Exhibit A (same).  Because Skoly is estopped from challenging the Board of Review's decision, Skoly's

foundational premise that he requires injunctive relief to once again preclude an unlawful denial of benefits is misplaced.

Additionally, injunctive relief is improper because such an injunction would concern future unknown facts and enjoin the state administrative and judicial process from applying state law. Among the requirements to receive unemployment benefits, an applicant must establish that they have made "an active, independent search for suitable, full-time work." R.I. Gen. Laws § 28-44-12(a)(3). Skoly makes no allegation that he complied with this state law requirement, nor does Skoly contest the Board of Review's conclusion that he failed to comply with this requirement. Should Skoly become unemployed in the future, Skoly's request that this Court enjoin future denial of benefits would seemingly alleviate Skoly's obligation to comply with state law.

Skoly cannot demonstrate that he is "immediately in danger of sustaining some direct injury," i.e., losing his job as a refusal to comply with a vaccination requirement and then being unlawfully denied unemployment compensation benefits based upon his failure to conduct "an active, independent search for suitable, full-time work." R.I. Gen. Laws § 28-44-12(a)(3). For all these reasons, this Court should not entertain Skoly's request to enjoin future conduct where no immediate threat of injury is present.

**B.    Skoly's Claim for Declaratory Relief is Non-Justiciable**

Where, as here, a plaintiff seeks declaratory relief concerning the operation of a law or regulation that is no longer operative, the request for relief must fail. Skoly

seeks declaratory relief that as applied to him: (1) the former-Emergency Regulation – 216-RICR-20-15-8 – violated his rights under the Equal Protection Clause and the Due Process Clause, (2) in issuing the "Notice of Violation and Compliance Order," the State Defendants violated Skoly's First Amendment rights, and (3) in denying unemployment benefits, the State Defendants violated his Due Process rights.  *See* Second Amended Complaint, at 21-22 (prayer for relief).  All of these actions relate to past conduct and/or an Emergency Regulation that has been superseded.

"The Declaratory Judgment Act is uncommon in that it neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies." *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 493 (1st Cir. 1992).  In other words, declaratory relief is "discretionary." *Id*.  "The federal courts' obligation to decide virtually all questions within their jurisdiction is, to that extent, curtailed when complainants seek declaratory relief." *Id*.

In *El Dia, Inc. v. Hernandez Colon*, the Court of Appeals advised that in considering whether to grant declaratory relief, a district court should consider "the totality of the circumstances." 963 F.2d 488, 494 (1st Cir. 1992).  The Court of Appeals explained, these considerations include: (1) "the need for courts to be chary about adjudicating constitutional rights by means of declaratory actions," (2) "the extent to which the federal case was ripe for adjudication," (3) "the desirability of abstention," (4) the "interest in nourishing comity between federal and commonwealth courts,"

and (5) "the equity-like nature of plaintiffs' action." *Id*. at 494-97. Consideration of these factors dictates that this Court decline to issue declaratory relief.

First, "[u]ncertain questions of constitutional law should be addressed only when absolutely necessary." *Id*. at 494. Thus, the First Circuit has advised, "courts should withhold declaratory relief as a matter of discretion if such redress is unlikely to palliate, or not needed to palliate, the fancied injury, especially when refraining from issuing a declaratory judgment 'avoid[s] the premature adjudication of constitutional issues.'" *Id*. Importantly, "declaratory judgments concerning the constitutionality of government conduct," the Court of Appeals warned, "will almost always be inappropriate when the constitutional issues are freighted with uncertainty and the underlying grievance can be remedied for the time being without gratuitous exploration of uncharted constitutional terrain." *Id*. This factor weighs decisively against issuing declaratory relief.

"Courts in this country have held for over a century that mandatory vaccination laws are a valid exercise of a state's police powers, and such laws have withstood constitutional challenges." *Dr. T.*, 2022 WL 79819 * 5 (D.R.I. 2022). While some cases presented justiciable issues – including this case when originally filed – Skoly no longer can demonstrate that he "has sustained or is immediately in danger of sustaining some direct injury[.]" *City of Los Angeles*, 461 U.S. at 102. Nonetheless, Skoly ask this Court to declare 216-RICR-20-15-8 violated his constitutional rights.

As the First Circuit has warned, however, "[b]y leaping into the fray even though, as a practical matter, there may no longer have been any fray into which to

leap, the court interposed itself in a heated political controversy at a time when the likelihood of injury was remote, the need for federal intervention difficult to grasp, and the status of the claimed constitutional rights shrouded in uncertainty." *El Dia*, 963 F.2d at 495.  While in *El Dia*, a Temporary Restraining Order issued by the Commonwealth court made federal court intervention unnecessary, here, the fact that 216-RICR-20-15-8 was superseded by 216-RICR-20-15-9, which was then superseded by 216-RICR-20-15-7, makes pellucid that "it would be pointless either to enjoin the enforcement of a regulation that is no longer in effect or to declare its constitutionality." *Kinton*, 284 F.3d at 18.  "Unsettled constitutional questions should be decided only as a last resort."  *El Dia*, 963 F.2d at 495.

Second, federal courts should consider whether the case is ripe for adjudication.  This consideration employs a two part test: (1) whether an issue is fit for review, e.g., whether a challenged government action is final and whether determination of the merits turns upon facts which may not yet be sufficiently developed, and (2) the "hardship," which "typically turns upon whether the challenged action creates a 'direct and immediate' dilemma for the parties."  *Id.*  In *El Dia*, the Court of Appeals determined the sought-after federal relief failed this test because the Commonwealth court issued a Temporary Restraining Order enjoining the challenged Executive Order.  *Id.* at 496.  Because the Temporary Restraining Order enjoined the government action challenged in federal court, the First Circuit concluded, "an actual dispute regarding access to documents under the Governor's as-yet-unimplemented directive simply cannot persist."  *Id.* "Thus," the Court of

Appeals continued, "any claim of injury, or any fear that persons' rights will be irremediably lost, is necessarily speculative." *Id*.

Similar to the enjoined executive order in *El Dia*; here, Skoly seeks declaratory relief regarding three past events: (1) the constitutionality of 216-RICR-20-15-8, (2) whether the "Notice of Violation and Compliance Order" violated his First Amendment rights, and (3) whether the denial of unemployment benefits violated his due process rights.  With limited exceptions, however, "issuance of a declaratory judgment deeming past conduct illegal is . . . not permissible as it would be merely advisory." *American Civil Liberties Union of Massachusetts v. United States Conference of Catholic Bishops*, 705 F.3d 44, 53, (1st Cir. 2013). *See also id*. ("federal courts 'are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong'") (quoting *Spencer v. Kemna*, 523 U.S. 1, 18 (1998)).  Because Skoly seeks declaratory relief concerning past conduct without any showing of a continuing effect, "any claim of injury, or any fear that persons' rights will be irremediably lost, is necessarily speculative." *El Dia*, 963 F.2d at 496.

The third and fourth factors concerns the desirability of abstention and the interest in advancing federal and state court comity. *Id*. at 496-97.  As discussed, *supra*, Skoly seeks injunctive and declaratory relief concerning the alleged unlawful denial of unemployment benefits.  As a matter of law, however, Skoly is estopped from contesting the Board of Review's decision.  This Court should not entertain

declaratory relief that would contravene res judicata and collateral estoppel principles.

Finally, a court should consider "the equity-like nature of plaintiffs' action." *El Dia*, 963 F.2d at 497. "Simply because an equitable remedy may be available does not necessarily mean that it must automatically issue." *Id*. The determination to issue a declaratory judgment must "assess all relevant facts and circumstances and tailor appropriate relief on a case by case basis." *Id*. It is a "basic doctrine of equity jurisprudence that courts of equity should not act … when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id*. "Federal courts should not rush to judgment when declaratory relief would produce 'uncoordinated and unnecessarily disruptive adjudications of disputes in which state and federal issues are intertwined.'" *Id*. at 497-98. It follows that "[d]eclaratory relief like other equitable remedies should be granted only as a matter of judicial discretion, exercised in the public interest." *Id*. at 498. As our Court of Appeals has recognized, "equity acts in the present," and thus, "the primary requirement for equitable relief is that it will be effective in accomplishing its remedial purpose." *Id*.

As discussed herein, Skoly's request for declaratory relief does not "act[] in the present," but rather concerns past actions and events. Indeed, "[i]n order for a claim for declaratory relief to survive a mootness challenge, [Skoly] must 'show that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Town of Portsmouth*, 813 F.3d at 59. *See also*

*American Civil Liberties Union*, 705 F.3d at 53 ("issuance of a declaratory judgment deeming past conduct illegal is . . . not permissible as it would be merely advisory"). Skoly does not satisfy this "sufficient immediacy and reality" standard.

While maintaining that "COVID-19 is constantly evolving," Second Amended Complaint, ¶ 143, Skoly nonetheless predicts that "it is probable that new COVID-19 variants will arise requiring that current COVID-19 rules be supplemented or amended." Second Amended Complaint, ¶ 126. Skoly fears that "[a]bsent the relief sought, [he] does not have any assurance that he will not be subjected to the same unreasonable treatment in the future as he was subjected to in the past." Second Amended Complaint, ¶ 127. Skoly also contends that "[s]o long as the Defendants refuse to acknowledge the science of natural immunity, it is likely that Dr. Skoly will face a new vaccine rule that again requires him to be vaccinated or give up his job." Second Amended Complaint, ¶ 145.

Skoly's predictions, however, fails to demonstrate "a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Town of Portsmouth*, 813 F.3d at 59. *See also New England Regional Council*, 284 F.3d at 18 ("it would be pointless either to enjoin the enforcement of a regulation that is no longer in effect or to declare its constitutional status"). Because Skoly seeks declaratory relief concerning past actions and cannot demonstrate a sufficiently immediate threat of injury to invoke this Court's jurisdiction, this Court should decline to issue declaratory relief.

* * *

The Section II analysis is based upon the always-present requirement that a plaintiff establish Article III jurisdiction by presenting a case and controversy. While Skoly may assert an exception to the mootness doctrine, Supreme Court precedent is clear that regardless of the mootness doctrine, Skoly must always present a justiciable issue. *See City of Los Angeles*, 461 U.S. at 109 ("The equitable doctrine that cessation of the challenged conduct does not bar an injunction is of little help in this respect, for Lyons lack of standing does not rest on the termination of the police practice but on the speculative nature of his claim that he will again experience injury as the result of that practice even if continued."). Skoly's failure to present a cognizable claim for monetary damages or equitable relief, requires this motion to dismiss be granted.

Respectfully submitted,

Daniel J. McKee, in his official capacity as the Governor of the State of Rhode Island; James McDonald, MD, MPH, in his official capacity as the Interim Director of the Rhode Island Department of Health; and Matthew D. Weldon, in his official capacity as Director of the Rhode Island Department of Labor and Training

Defendants,

BY:

PETER F. NERONHA,
ATTORNEY GENERAL

*/s/ Michael W. Field*
Michael W. Field, Bar No. 5809
Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400 Ext. 2380
mfield@riag.ri.gov

*/s/ Chrisanne Wyrzykowski*
Chrisanne Wyrzykowski, Bar No.7565
Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400 Ext. 2335
cwyrzykowski@riag.ri.gov

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I filed the within via the ECF filing system and that a copy is available for viewing and downloading.  I have also caused a copy to be sent via the ECF System to counsel of record on this 28th day of June, 2022.

*/s/ Michael W. Field*