UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____

DR. STEPHEN T. SKOLY, Jr.

        Plaintiff,

vs.   :   C.A. 1:22-cv-00058-MSM-LDA

DANIEL J. MCKEE, sued in his official and individual capacities as the Governor of the State of Rhode Island; NICOLE ALEXANDER-SCOTT, sued in her official and individual capacities as the former Director of the Rhode Island Department of Health; JAMES McDONALD, sued in his official and individual capacities as the former Interim Director of the Rhode Island Department of Health; UTPALA BANDY, sued in her official and individual capacities as the current Interim Director of the Rhode Island Department of Health; MATTHEW D. WELDON, sued in his official and individual capacities as the Director of the Rhode Island Department of Labor and Training; the STATE OF RHORD ISLAND; THE RHODE ISLAND DEPARTMENT OF HEALTH; and the RHODE ISLAND DEPARTMENT OF LABOR AND TRAINING.

        Defendants.
_____

**DEFENDANTS' REPLY MEMORANDUM**

The Plaintiff's Memorandum in Opposition (hereafter "Opposition") significantly narrows the legal issues before this Court. It is not disputed that the Emergency Regulation "applied to Dr. Skoly," Third Amended Complaint, ¶ 44; "Dr. Skoly determined that it was in his medical best interests not to get vaccinated at that time," Third Amended Complaint, ¶ 57; and on October 1, 2021, "Defendant Alexander-Scott

1

issued Dr. Skoly a Notice of Violation and Compliance Order." Third Amended Complaint, ¶ 59. Nor does Skoly dispute that Count IV may be dismissed. Opposition, at 5. And, Dr. Skoly acknowledges that *Will v. Michigan* bars monetary relief in this lawsuit (all Section 1983 claims) against the State of Rhode Island, its agencies, or its agents in their official capacity. Opposition, at 4-5. What's left is:

- Count I and II (Equal Protection and Due Process)– a claim for monetary damages that the issuance of the "Notice of Violation and Compliance Order" and its continued posting on the Rhode Island Department of Health (RI DOH) website after March 11, 2022 violated Skoly's substantive due process and equal protection rights, as well as declaratory and injunctive relief that the federal CMS vaccination requirement incorporated into the state Permanent Regulation is unlawful and violative of substantive due process and equal protection; and

- Count III (First Amendment retaliation)– a claim for monetary damages that the "Notice of Violation and Compliance Order" was issued by Dr. Alexander-Scott in retaliation for his free speech and a permanent injunction ensuring that Skoly is not deprived of his First Amendment rights to speak out against government policy in the future.

*See* State's Motion to Dismiss (hereafter "Motion"), at 9-11. Even with these remaining claims "Dr. Skoly concedes that 'a state official who performs prosecutorial functions, including the initiation of administrative proceedings that may result in legal sanctions, is absolutely immune from damages actions.'" Opposition, at 14-15. Thus, Dr. Skoly admits, "Dr. Alexander-Scott's decision to levy administrative charges against Dr. Skoly may well be immune from judicial challenge[.]" Opposition, at 15. That absolute

2

immunity concession resolves the equal protection, due process, and retaliation claims regarding the issuance of the "Notice of Violation and Compliance Order" in Counts I, II, and III. The claims that remain are narrow and short-lived.[1] While the State Defendants take numerous issues with the assertions made by Skoly, only the ones necessary to resolve this lawsuit are addressed herein.

I. **Count III: First Amendment Retaliation Claim Fails as a Matter of Law**

Although Skoly's Third Amended Complaint is limited to one adverse action – the issuance of the "Notice of Violation and Compliance Order" – the Opposition adds a second adverse action, i.e., posting the "Notice of Violation and Compliance Order" on the RI DOH website and then failing to remove the posting from the website.[2] Opposition, at 22. Neither alleged adverse action is cognizable under First Amendment retaliation law.

  1. The "Notice of Violation and Compliance Order"
      a. Initiating and maintaining the administrative action against Skoly is a prosecutorial function entitled to absolute immunity[3]

---

[1] Many of Skoly's assertions do not cite to the record for support.

[2] The Third Amended Complaint alleged that maintaining the "Notice of Violation and Compliance Order" on the RI DOH website after March 11, 2022 violated Skoly's equal protection and substantive due process rights, but he did not allege a First Amendment violation.

[3] Because of absolute immunity, it is not necessary to address what Skoly contends are his protected statements or any statements allegedly made by the State Defendants. One alleged statement that Skoly focuses upon does, however, merit limited discussion. Skoly, takes issue with "Dr. Alexander-Scott explicitly [stating] in one of her press conferences that enforcement action pursuant to the original vaccine mandate would be taken only against those practitioners who 'publicly stated that they would not comply.' AnchorRising.com, Governor McKee Declines to Comment about 854 Unvaccinated HealthCare Workers, https://bit.ly/3CtcQzM." Opposition, at 4. The link referenced by Skoly brings the user to the referenced article, which was published March 13, 2022. Among the sentences within the March 13, 2022 article is that "WPRO's Matt Allen reminded me on air Friday [March 11, 2022] that Dr. Alexander Scott had stated at a press conference, in her capacity as the Director of the Rhode Island Department of Health, that vaccine mandate enforcement action would only be taken against health care workers who

3

Skoly argues that qualified immunity does not protect the State Defendants from a First Amendment Retaliation claim relating to the issuance of the "Notice of Violation and Compliance Order." Opposition, at 9-12. And, despite acknowledging *Gonzalez-Droz Gonzalez-Colon*, 660 F.3d 1 (1st Cir. 2011), as well as his admitted violation of the Emergency Regulation, Skoly nonetheless claims that determining whether the "Notice of Violation and Compliance Order" would have issued absent his protected speech is inappropriate at the Motion to Dismiss stage.[4] Opposition, at 18-19. This Court need not resolve either issue raised by Skoly because Dr. Alexander-Scott – as well as anyone else who initiated, maintained, or prosecuted the "Notice of Violation and Compliance Order" – is entitled to absolute prosecutorial immunity. As the State Defendants previously explained:

> [h]ere, the State Defendants' vehement denial that the 'Notice of Violation and Compliance Order' was issued and maintained for retaliatory reasons is of no moment since '[t]he protection afforded by an absolute immunity endures even if the official 'acted maliciously and corruptly' in exercising his judicial or prosecutorial functions.' [*Goldstein v. Galvin*, 719 F.3d 16, 24 (1st Cir. 2013)]. 'In determining whether an official qualified for absolute immunity, an inquiring court must examine the particular functions that the official performs.' *Id.* at 24. Importantly, the First Circuit's framing of the issue in *Goldstein* mirrors the issue raised by Skoly: 'The retaliation alleged in this case involves the Secretary's actions in choosing to bring, and actually bringing, the enforcement action.' *Id.* at 25.
>
> The *Goldstein* Court recognized the 'baseline rule that a state official who performs prosecutorial functions, *including the initiation of administrative proceedings that may result in legal sanctions*, is absolutely immune from damages actions.' *Id.* at 26 (emphasis added).

---

publicly stated they would not comply." Exhibit A; https://bit.ly/3CtcQzM, at 3. As such, Skoly's basis for this statement appears to consist of at least three-levels of hearsay.

[4] While *Gonzalez-Droz* was a summary judgment case, it is notable that the First Circuit took a "different approach." *Gonzalez-Droz*, 660 F.3d at 9. As the Court of Appeals explained, "the issues are purely legal and the outcome in clear." *Id.*

4

Motion, at 29.  Critically, Skoly agrees with the State's absolute immunity analysis and its application to any person who performed a prosecutorial function.  *See* Opposition, at 14-15 ("Dr. Alexander-Scott's decision to levy administrative charges against Dr. Skoly may well be immune from judicial challenge").  A such, to the extent Skoly alleges that the "Notice of Violation and Compliance Order" was issued, maintained, or prosecuted for retaliatory motives, absolute immunity bars these claims.

2. Maintaining the "Notice of Violation and Compliance Order" on the RI DOH website post-March 11, 2022 did not violate Skoly's First Amendment rights

Skoly's Third Amended Complaint makes clear that he seeks damages under the Equal Protection Clause and the Due Process Clause for "the damage caused by Defendants' RIDOH website posting of the Notice of Violation and Compliance Order after March 1, 2022."  Third Amended Complaint, ¶¶ 169, 195.  The Opposition diverges, ignores the equal protection and due process claims, and asserts that posting the "Notice of Violation and Compliance Order" on the RI DOH website – both prior to March 11, 2022, and after March 11, 2022 – is actionable as retaliation under the First Amendment.[5] The Opposition does not address the equal protection or substantive due process claims, and as such, these claims should be dismissed.  To the extent the Court entertains the retaliation claim, it is foreclosed by *Goldstein*.

In *Goldstein*, the Massachusetts Secretary of State's Office disclosed the plaintiff's name in a public announcement on the Office's website relating to an enforcement proceeding.  Goldstein alleged that the Secretary of State improperly "issued a public

---

[5] These allegations are not contained in Skoly's Third Amended Complaint, and therefore, are not properly before this Court.  *See Ledoux v. Whitepages, Inc.*, 2018 WL 10323624, at *3, (D. Mass. Sept. 28, 2018) ("This [notice] requirement is not met when a complaint is silent as to factual allegations and legal theories raised by a plaintiff in later-filed memoranda.").

announcement which singled out [the plaintiff] (and no other individual respondent) by name." *Goldstein*, 719 F.3d at 30. Goldstein also contended that the action "departed from the Secretary's 'custom and usual practice when issuing a public announcement of the filing of an administrative complaint' under which he does not normally 'identify any individual respondent by name.'" *Id*. The First Circuit Court of Appeals resolved Goldstein's retaliation claim on government speech grounds, i.e., the website posting constituted government speech.

The Court of Appeals explained, "[i]n this instance, the alleged retaliatory act is itself in the form of government speech – the Secretary's use of the plaintiff's name in a website announcement." *Id*. at 30. The Court cautioned, "[c]ourts have not been receptive to retaliation claims arising out of government speech," and explained that this "cautious approach to limiting government speech is warranted [because not] only do public officials have free speech rights, but they also have an obligation to speak out about matters of public concerns." *Id*.

The Court of Appeals framing of the *Goldstein* issue applies equally in this case: "The crucial question in whether, under these circumstances, the inclusion of the plaintiff's name in the announcement can ground a claim of unconstitutional retaliation. We think not." *Id*. at 30. The First Circuit's conclusion was grounded in government speech, the Court's "cautious approach to limiting government speech," and public officials "obligation to speak out about matters of public concern." *Id*. (citing *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 417 (4th Cir. 2006) ("When the challenged government action is government speech, there is no retaliation liability – even if the plaintiff can demonstrate a substantial adverse impact – unless the government speech concerns 'private information about an individual' or unless it was 'threatening, coercive, or

6

intimidating so as to intimate that punishment, sanction, or adverse regulatory action will imminently follow.'"). As the Court of Appeals expressed, "[i]t is clear beyond hope of contradiction that the inclusion of the plaintiff's name in a run-of-the-mill website announcement did not sink to the level of actionable retaliatory conduct." *Id.* at 30.

Skoly attempts to distinguish *Goldstein* on the grounds that the information posted by RI DOH officials was inaccurate and/or misleading. At least as to the pre-March 11, 2022 posting, Skoly seems to suggest that because the "Notice of Violation and Compliance Order" was not a final or operative order, RI DOH's posting was inaccurate. Opposition, at 15-16. But Skoly cites no authority for this conclusion and the State Defendants are unaware of any legal authority that prohibits the publishing of an enforcement action prior to the entry of a final order. *Goldstein* expressly holds otherwise.

To the extent Skoly claims that he was permitted to practice dentistry until the "Notice of Violation and Compliance Order" was determined with finality – and the RI DOH posting inaccurately communicated otherwise – in early November 2021, an administrative hearing was held on Skoly's motion to allow him to continue to practice dentistry pending a final decision on Skoly's challenge to the "Notice of Violation and Compliance Order." By written decision dated November 10, 2021, the Hearing Officer denied Skoly's motion, concluding "there are no grounds to allow the Respondent [Skoly] to continue practicing as a health care provider in violation of the Regulation pending the hearing." Exhibit B, at 10.[6]

---

[6] This Court may consider matters of public record, including documents from state court proceedings, without being required to convert a 12(b)(6) motion to a motion for summary judgment. *In Re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003); *Boateng v. InterAmerican University, Inc.*, 210 F.3d 56, 60 (1st Cir. 2000) cert. denied 531 U.S. 904. Additionally, "courts have made narrow exceptions for documents

7

Undercutting his own pre-March 11, 2022 argument, Skoly notes that "[e]ven if the Court were to disagree as to the initial existence of a valid Compliance Order," once the "Notice of Violation and Compliance Order" was dismissed or withdrawn, continued posting on the RI DOH website represented retaliation in violation of the First Amendment. Opposition, at 17. But Skoly references no legal authority for the conclusion that if an enforcement action has ended, the charging documents must be removed from the enforcement agency's website within a particular period of time. The "Notice of Violation and Compliance Order" were, of course, removed from the RI DOH website, but in light of *Goldstein*, Skoly cannot demonstrate that the failure to remove such documents within approximately six (6) months violated a clearly established constitutional right affording any responsible State Defendants qualified immunity.

Indeed, *Goldstein* (as well as the cases cited within *Goldstein*) establishes that when government speech is alleged to be retaliatory – such as the continued posting of information on a government website – courts are "cautious" about allowing First Amendment retaliation claims. Skoly's attempt to present contrary qualified immunity law from outside this Circuit in two non-governmental speech cases, both of which preceded *Goldstein,* supports nothing but the most generalized principle that government officials may not retaliate against a private citizen's protected speech. As such, qualified immunity protects any State Defendants from monetary damages regarding any pre and post-March 11, 2022 posting on the RI DOH website.

---

the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff's claim; or for documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993); *Cruz v. Melecio*, 204 F.3d 14, 21 (1st Cir. 2000)(allows a court considering a 12(b)(6) Motion to consider "not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice.").

## II. The Mootness Doctrine is Not Applicable in This Case

While Skoly contends that his claims for injunctive and declaratory relief fall within a mootness exception, the State Defendants have never claimed mootness. In Count I and II, Skoly seeks injunctive and declaratory relief concerning the federal CMS vaccine requirement incorporated into the state Permanent Regulation. Since the CMS vaccine requirement is reflected in the Permanent (current) Regulation, the State Defendants never asserted mootness. Rather, the State Defendants argued that because the Permanent Regulation incorporates the federal CMS vaccine requirement, this Court is unable to provide justiciable effective relief since this lawsuit does not challenge the federal requirement, which would continue to control regardless of whether this Court enjoined enforcement through the Permanent Regulation. *See* Motion, at 46-48.

Skoly also seeks a "permanent injunction ensuring that he is not deprived of his First Amendment right to speak out against government policy in the future." Third Amended Complaint, ¶ 214. Again, the State Defendants did not argue mootness, but rather argued:

> Skoly cannot sustain his burden of invoking this Court's jurisdiction and demonstrating that he is 'immediately in danger of sustaining some direct injury' as the result of the challenged official conduct,' nor can Skoly demonstrate that any injury or threat is 'both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Skoly's complaint is devoid of any such allegation and the actions he seeks to enjoin – future retaliatory conduct * * * is untethered to any State Defendant, two of whom are no longer in state government. Motion, at 49.

Skoly cannot meet this burden and the inability to cite any alleged retaliatory conduct based on free speech in the last year supports the State's position that Skoly faces no "real and immediate" injury.

9

**III.     The Voluntary Cessation Doctrine is Not Applicable**

The voluntary cessation exception "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *American Civil Liberties Union v. United States Conference of Catholic Bishops*, 705 F.3d 44, 54 (1st Cir. 2013). As the Court of Appeals recently expressed, the voluntary cessation doctrine – which turns on the circumstances of a particular case – "'does not apply' if the change in conduct is 'unrelated to the litigation.'" *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 10 (1st Cir. 2021). Here, the voluntary cessation doctrine is inapplicable.

On August 17, 2021, 216-RICR-20-15-8 was promulgated by the RI DOH pursuant to R.I. Gen. Laws § 42-35-2.10, became effective October 1, 2021, and was scheduled to lapse by operation of law after 180 days, *i.e.*, February 13, 2022. *See* R.I. Gen. Laws § 42-35-2.10 (emergency regulations last 120 days, renewable once for 60 days). Emergency Regulation 216-RICR-20-15-8 faced legal scrutiny even before its effective date when several health care workers and health care providers challenged the Emergency Regulation on the ground that it required a COVID-19 vaccination without consideration of a religious exemption. This Court denied a temporary restraining order and a preliminary injunction seeking to enjoin enforcement of the Emergency Regulation. *See Dr. T. v. Alexander-Scott*, 2021 WL 4476784 (D.R.I. 2021) (denying temporary restraining order); *Dr. T. v. Alexander-Scott*, 2022 WL 79819 (D.R.I. 2022) (denying preliminary injunction).

In February 2022 – approximately four months after 216-RICR-20-15-8 became effective and the "Notice of Violation and Compliance Order" issued – Skoly filed the instant lawsuit. At the time Skoly filed this lawsuit on February 4, 2022, 216-RICR-20-

15-8 was already scheduled to expire on February 13, 2002; however, on February 11, 2022, Governor Daniel J. McKee issued Executive Order 22-14, suspending "the statutory time limits contained in Rhode Island General Laws § 42-35-2.10 . . . for 216-RICR-20-15-8." *See* https://governor.ri.gov/executive-orders/executive-order-22-14.

The effect of Executive Order 22-14 was twofold: (1) it extended the requirements of 216-RICR-20-15-8 through March 12, 2022, and (2) it demonstrates that rather than taking actions to *avoid* judicial scrutiny, the State Defendants were motivated by public health concerns, and *extended* the Emergency Regulation notwithstanding ongoing litigation in *Dr. T.* and *Skoly*.  Because no public health restrictions would be in place for health care workers or health care providers when 216-RICR-20-15-8 was scheduled to expire on March 12, 2022, on March 11, 2022, RI DOH promulgated 216-RICR-20-15-9, which superseded 216-RICR-20-15-8.  216-RICR-20-15-9 required health care workers to be vaccinated against COVID-19 ***or*** to wear an N95 mask under applicable conditions.  In promulgating 216-RICR-20-15-9, the RI DOH explained, in relevant part:

> [s]ince October 1, 2021, an Emergency Regulation (216-RICR-20-15-8) has been in place mandating that all health care workers and providers be vaccinated against the novel coronavirus SARS-CoV-2, also known as COVID-19 (the 'Emergency Regulation').  Two highly contagious strains of the virus, the Delta and Omicron variants, spread through Rhode Island between October 1, 2021 and March 9, 2022, with transmission rates ranging from a low of 94 cases per 100,000 people in the prior seven days, on March 8, 2022, to a high of more than 3,400 cases per 100,000 people in the seven days prior to January 9, 2022.  Among the purposes of 216-RICR-20-15-8 has been to limit transmission of COVID-19 and protect public health.
>
> The Emergency Regulation will expire on March 12, 2022 and the COVID-19 transmission rate is at its lowest point since 216-RICR-20-15-8 went into effect, allowing restrictions to now be eased.  The Rhode Island Department of Health ('RIDOH') is currently in the process of promulgating permanent rules to ensure that suitable protections regarding health care workers and COVID-19 will continue to be enforceable for the health, safety, and welfare of Rhode Islanders, but those rules will not be finalized when the Emergency Regulation expires.  While COVID-19 transmission rates and

> number of persons hospitalized with COVID-19 is decreasing, a need remains to protect vulnerable patients from the spread of respiratory droplets containing COVID-19 by ensuring that mitigation measures continue to be in place in locations where COVID-19 represents an especially high risk to public health, such as facilities in which health care workers are treating the most vulnerable patients, especially in a congregate setting.

Exhibit C; https://rules.sos.ri.gov/Regulations/part/216-20-15-9?reg_id=12746 (overview tab).

The promulgation of 216-RICR-20-15-9 hours before 216-RICR-20-15-8 was due to expire does support the invocation of the voluntary cessation doctrine. "Circuit courts have routinely held that the voluntary cessation exception is not invoked when the challenged conduct ends because of an event that was scheduled before the initiation of the litigation, and is not brought about or hastened by any action of the defendant." *American Civil Liberties Union*, 705 F.3d at 55. Here, at the time Skoly filed this lawsuit, 216-RICR-20-15-8 was due to expire on February 13, 2022. Rather than hasten any action to terminate the challenge Emergency Regulation, Governor McKee issued Executive Order 22-14, which effectively extended the Emergency Regulation through March 12, 2022. Thereafter, even if 216-RICR-20-15-9 was never promulgated, the challenged Emergency Regulation – 216-RICR-20-15-8 – would have lapsed after March 12, 2022.

As the Court of Appeals has explained, the voluntary cessation doctrine has no application:

> given that the Order 'expired by its own terms, according to criteria adopted before [the Retirement System] ever filed this litigation.' There is thus no basis on this record for finding that the concerns about manipulation to evade review that underlie this exception to mootness are applicable.

*In re: The Financial Oversight and Management Board*, 16 F.th 954, 962 (1st Cir. 2021). *See also American Civil Liberties Union*, 705 F.3d at 55 ("The HHS-USCCB contract expired according to its terms, HHS did nothing to hasten its expiration, much less do so

to terminate litigation; indeed, HHS continued to exercise options even after the ACLUM filed suit. Moreover, the expiration date, options, and task order extension were all built into the contract's terms before his litigation began."); *Boston Bit Labs*, 11 F.4th at 10 ("So the circumstances suggest that Governor Baker issued Order 69 not to avoid a court judgment, but in response to the progress made in battling the pandemic."). As such, the voluntary cessation doctrine has no application in this case.[7]

## IV.   Conclusion

For all these reasons, the State Defendants' Motion to Dismiss should be granted.

Respectfully submitted,

Defendants,

BY:

PETER F. NERONHA,
ATTORNEY GENERAL

*/s/ Michael W. Field*
Michael W. Field, Bar No. 5809
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 Ext. 2380
Fax: (401) 222-3016
mfield@riag.ri.gov

---

[7] Skoly's focus on the Governor's emergency powers and the on-going state of emergency is misplaced because the Emergency Regulation at issue was promulgated by RI DOH through the Administrative Procedures Act. *See* R.I. Gen. Laws § 42-35-2.10. The fact that a legal regime remains whereby RI DOH may continue to promulgate emergency regulations is not, by itself, a factor in the mootness analysis. *See Boston Bit labs v. Baker*, 11 F.4th 3, 10 (1st Cir 2021) ("That the Governor has the power to issue executive orders cannot itself be enough to skirt mootness, because then no suit against the government would ever be moot.").

## **CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that I filed the within via the ECF filing system and that a copy is available for viewing and downloading. I have also caused a copy to be sent via the ECF System to counsel of record on this 15th day of February, 2023.

                                             */s/ Michael W. Field*